# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Antoinette QUANDER-CLEMONS** <br> 5809 Alan Drive <br> Clinton, Maryland 20735 <br><br> Plaintiff, <br><br> v. <br><br> **DISTRICT OF COLUMBIA,** <br> a municipal corporation, <br> Office of Corporation Counsel <br> 441 4th Street, N.W. <br> Washington, D.C.  20001 <br><br> Defendant. | **Jury Demand** |

## COMPLAINT

COMES NOW the Plaintiff, Antoinette Quander-Clemons, by and through her counsel, the Law Office of Jimmy A. Bell, P.C. and Jimmy A. Bell, Esquire, and respectfully presents this complaint against the Defendant, The District of Columbia, to enforce her rights under 42 U.S.C. § 1981 and District of Columbia Human Rights Act § 2-1402.11.

## JURISDICTION

1. Plaintiff Quander-Clemons alleges a cause of action, in part, arising under 42 U.S.C. § 1981. As this constitutes a civil action arising under the laws of the United States, federal jurisdiction is proper under 28 U.S.C. § 1331.

## VENUE

2. Venue is proper in the District of Columbia as the Defendant is the Government of the District of Columbia, Defendant conducts business within the District of Columbia, and the acts complained of occurred within the said jurisdiction.

## STATEMENT OF FACTS

3. At all times relevant to this Complaint, Plaintiff Antoinette Quander-Clemons ("Plaintiff") is a citizen of Clinton, Maryland.

4. During all times mentioned in the following complaint, Plaintiff has been the Secretary for the Associate Director of Finance and Administration for the Department of Mental Health.

5. During all times mentioned in the following complaint, the Department of Mental Health was an agency of Defendant District of Columbia.

6. Plaintiff has been employed by Defendant District of Columbia for 24 years.

7. Plaintiff has been stationed at Saint Elizabeth's Hospital for 21 years in her capacity as an employee of Defendant District of Columbia.

8. At or about 4:25 p.m. on June 28, 2005 Plaintiff was at her desk, at her place of employment.

9. At or about 4:25 p.m. on June 28, 2005, Dr. Edward Kushner ("Kushner") and Dr. Abrams ("Abrams") entered Plaintiff's office.

10. Upon entering Plaintiff's office as described in paragraph 9, Kushner and Abrams asked to leave a message for Robin Knight with Plaintiff.

11. When Plaintiff agreed to Kushner and Abrams request described in paragraph 10, Abrams told Plaintiff to "tell Robin [Knight] that time is running out and running out fast and that she needs to get [her work] done."

12. When Plaintiff agreed to Kushner and Abrams request described in paragraph 8, Kushner told Plaintiff to "tell her to get it done before we lynch her."

13. Plaintiff is an African-American woman.

14. Robin Knight is an African-American.

15. On July 6, 2005, Kushner sent Plaintiff correspondence entitled "Apology."

16. In the correspondence described in paragraph 15, Kushner admitted that "while Dr. Abrams and [Kushner] were talking to [Plaintiff], I used the term "lynch." See exhibit 1, annexed hereto.

17. In the correspondence described in paragraph 15, Kushner admitted that he "deeply regret the use of this term and [he] ashamed that [he] said [lynch]." See exhibit 1, annexed hereto.

18. In the correspondence described in paragraph 15, Kushner suggests that he understood and recognized the connotation of the term "lynch" when he used it, thus prompting him to feel "deep regret" and "ashamed."

19. Upon information and belief, Kushner used the term lynch because it is a term which African-Americans find particularly threatening.

20. Upon information and belief, Kushner's use of the term lynch was meant to intentionally discriminate against Plaintiff on account of her race (black).

21. In or about the June 2005, Plaintiff was in Mr. Mayo's ("Mayo") office with Gerard Tolliver ("Tolliver").

22. Tolliver is Plaintiff's supervisor and is an employee, agent, and/or representative of Defendant.

23. Mayo discussing the rumors about him that were circulating throughout the workplace.

24. Mayo stated that the rumors about him were false.

25. Tolliver interrupted the discussion described in paragraph 23 and stated that there was a rumor that he and Plaintiff were involved in a sexual relationship.

26. Plaintiff stated that she had never heard of the rumor described in paragraph 25.

27. Plaintiff was mentally and emotionally disturbed by Tolliver's innuendo and suggestion that Plaintiff and Tolliver were involved in a sexual relationship.

28. Plaintiff has been married for ten (10) years.

29. Immediately following the meeting, Plaintiff asked her co-worker whether there were any rumors like that described in paragraph 25.

30. Plaintiff's co-workers had never heard of any rumor like that described in paragraph 25.

31. Upon information and belief, Tolliver fabricated the rumor described in paragraph 25 to intentionally make sexual advances towards Plaintiff.

32. Upon information and belief, Tolliver's actions described in paragraph 25 were meant to intentionally discriminate against Plaintiff on account of her sex (female).

33. After the incident described in paragraphs 22-33, Tolliver approached Plaintiff towards the end of the work day, at or about 5:00 p.m.

34. After approaching Plaintiff as described in paragraph 33, Tolliver asked Plaintiff what her plans were for the evening.

35. In response to the acts described in paragraph 34, Plaintiff informed Tolliver that she was going home to her husband and planning on studying.

36. In response to the acts described in paragraph 35, Tolliver proposed that she "go to a club" with Tolliver and his buddies instead of returning home.

37. In response to the acts described in paragraph 36, Plaintiff declined.

38. In response to the acts described in paragraph 37, Tolliver insisted on giving Plaintiff the address of the club anyway and asked her again to meet him.

39. Plaintiff did not meet Tolliver at the club.

40. Upon information and belief, Tolliver was trying to initiate a sexual relationship with Plaintiff by repeatedly asking her to join him at the club.

41. Upon information and belief, Tolliver's advances described in paragraph 40 were meant to intentionally discriminate against Plaintiff on account of her sex (female).

42. At or about 10:30 a.m. on Thursday August 18, 2005 Plaintiff was entered Tolliver's office.

43. Upon entering Tolliver's office as described in paragraph 42, Plaintiff said "good morning" to Tolliver and Jerome Austin ("Austin"), who was also present.

44. Tolliver responded to Plaintiff's greeting be stating to Austin and Plaintiff, "Toni [Plaintiff Antoinette Quander-Clemons] is my **ho** today."

45. Plaintiff was so shocked at Tolliver's statement described in paragraph 44, she exclaimed "What?!"

46. Austin was shocked at Tolliver's statement described in paragraph 44 he exclaimed "What did you just say?!".

47. Tolliver repeated, "Toni is my **ho** today."

48. Plaintiff was humiliated and embarrassed because she knew that the term "ho" was a slang term for a prostitute.

49. Plaintiff's emotions described in paragraph 48 were heightened because Tolliver was her supervisor.

50. Plaintiff left the office and began to cry as a result of Tolliver's statements described in paragraphs 44 and 47.

51. Plaintiff had to be consoled by co-workers as a result of Tolliver's statements described in paragraph 44 and 47.

52. On or about August 18, 2005, Plaintiff approached Tolliver and asked him how he could make the shocking statements described in paragraph 44 and 47.

53. During the conversation described in paragraph 52, Plaintiff stated that she was Tolliver's secretary, not his "ho."

54. During the conversation described in paragraph 52, Tolliver stated that referring to Plaintiff has "his ho" or "his bitch" was a term of affection.

55. In response to Tolliver's claim described in paragraph 54, Plaintiff stated that she did not believe being someone's "ho or bitch" was a term of affection.

56. In response to Tolliver's claim described in paragraph 54, Plaintiff stated that she believed being referred to as someone's "ho or bitch" was sexual harassment.

57. In response to Plaintiff's statements described in paragraph 55-56, Tolliver was taken aback.

58. In response to Plaintiff's statements described in paragraph 55-56, Tolliver became more serious.

59. During the conversation described in paragraph 52, Plaintiff told Tolliver not to call her a "ho" or "bitch" again.

60. In response to Plaintiff's statements described in paragraph 59, Tolliver said, "that's what you're acting like."

61. Plaintiff asked Tolliver to clarify his statement described in paragraph 60.

62. In response to Plaintiff's statements described in paragraph 61, Tolliver said, "you're acting like a bitch right now because I called you a 'ho.'"

63. In response to Tolliver's statement described in paragraph 62, Plaintiff left Tolliver's office.

64. Upon information and belief, Tolliver's statements described in paragraph 42-62 were meant to intentionally discriminate against Plaintiff on account of her sex (female).

65. After the activities described in paragraphs 8 through 64, Tolliver told the Chief Executive Officer, that "]Plaintiff] must not want [her] job."

66. After the activities described in paragraphs 8 through 64, Tolliver repeatedly told the Chief Executive Officer, on different occasions, that "]Plaintiff] must not want [her] job."

67. After the activities described in paragraphs 8 through 64, Plaintiff received a voicemail message from Tolliver.

68. At the end of the message described in paragraph 67, an unidentified person asked Tolliver who he was talking to.

69. In response to the question described in paragraph 68, and during the message described in paragraph 67, Tolliver replied, "My secretary. I am about to firer her ass."

70. Upon information and belief, Tolliver's threats to fire Plaintiff described in paragraphs 65-69 were a result of Plaintiff's refusal to engage in a sexual relationship with Tolliver.

71. After and as a result of the activities described in paragraphs 8 through 64, Plaintiff felt uneasy and threatened at her place of employment.

72. After and as a result of the activities described in paragraphs 8 through 64, Plaintiff felt that her job was in jeopardy.

73. After and as a result of the activities described in paragraphs 8 through 64, Plaintiff felt that she worked in a hostile working environment.

## COUNT I

### UNLAWFUL DISCRIMINATION IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT § 2-1402.11

74. Plaintiff re-pleads and re-alleges, with the same force and effect as if set forth separately and at length herein, paragraphs 1 – 73.

75. Plaintiff is a member of a protected class based on her race (black).

76. Plaintiff suffered an unlawful, discriminatory, and adverse change in employment with respect to her terms, conditions, or privileges of employment, including promotion based on her membership in a protected class, namely her race (black).

77. Plaintiff suffered an unlawful, discriminatory, and adverse employment action, change, limitation and/or classification that deprived and/or tended to deprive Plaintiff of employment opportunities and otherwise adversely affect her status as an employee and/or privileges of employment based on her membership in a protected class, namely her race (black).

78. Plaintiff suffered adverse employment action(s).

79. Defendant intentionally discriminated against Plaintiff in violation of the District of Columbia Human Rights Act § 2-1402.11 on account of her race (black).

## COUNT II

### UNLAWFUL DISCRIMINATION IN VIOLATION OF THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT § 2-1402.11

80. Plaintiff re-pleads and re-alleges, with the same force and effect as if set forth separately and at length herein, paragraphs 1 – 79.

81. Plaintiff is a member of a protected class based on her sex (female).

82. Plaintiff suffered an unlawful, discriminatory, and adverse change in employment with respect to her terms, conditions, or privileges of employment, including promotion based on her membership in a protected class, namely her sex (female).

83. Plaintiff suffered an unlawful, discriminatory, and adverse employment action, change, limitation and/or classification that deprived and/or tended to deprive Plaintiff of employment opportunities and otherwise adversely affect her status as an employee and/or privileges of employment based on her membership in a protected class, namely her sex (female).

84. Plaintiff suffered adverse employment action(s).

85. Defendant intentionally discriminated against Plaintiff in violation of the District of Columbia Human Rights Act § 2-1402.11 on account of her sex (female).

## COUNT III

### VIOLATION OF CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

86. Plaintiff repleads and realleges paragraphs 1 – 85 with the same force and effect as if set forth separately and at length herein.

87. Plaintiff is a member of a protected class (African American).

88. Defendant, itself and/or by and through its agent(s), employee(s), and/or representative(s) acted in a discriminatory manner that a reasonable person would find objectively unreasonable.

89. Plaintiff did not enjoy the services, privileges, benefits and protections offered to other persons outside of Plaintiff's protected class.

90. Defendant intentionally discriminated against Plaintiff in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, on account of the race (African American) of Plaintiff.

91. The discrimination by Defendant interfered with a protected activity as defined in 42 U.S.C. § 1981.

### RELIEF SOUGHT

92. Plaintiff re-pleads and re-alleges, with the same force and effect as if set forth separately and at length herein, paragraphs 1 – 91.

93. Plaintiff requests the following relief:

94. Compensatory and punitive damages in the amount of $5,000,000.00.

95. Pre- and post-judgment interest.

96. The costs of litigation, including reasonable attorney's fees and expert witness fees.

97. Such other relief that may be just.

## JURY DEMAND

98. Plaintiff demands a trial by jury.


Respectfully submitted,


_____/s/_____
Jimmy A. Bell, Esq.
The Law Office of Jimmy A. Bell, P.C.
9610 Marlboro Pike
Upper Marlboro, MD   20772
(301) 599-7620
(301) 599-7623 (Fax)
Bar No. MD 14639