**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| Antoinette QUANDER-CLEMONS | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 1:06-cv-00227-PLF |
| v. | : | |
| | : | |
| DISTRICT OF COLUMBIA, | : | |
| | : | |
| Defendant. | : | |

---

**REPORT OF THE RULE 16.3 CONFERENCE**

Pursuant to the rules of this Court, counsel in the above-styled matter submit this report

regarding the issues discussed at their LCvR 16.3 Conference.  A proposed Scheduling Order

incorporating the parties' report is attached.

**I.      STATEMENT OF THE CASE**

Plaintiff Quander-Clemons alleges a cause of action, in part, arising under 42 U.S.C. §

1981.  As this constitutes a civil action arising under the laws of the United States, federal

jurisdiction is proper under 28 U.S.C. § 1331.  Venue is proper in the District of Columbia as the

Defendant is the Government of the District of Columbia, Defendant conducts business within

the District of Columbia, and the acts complained of occurred within the said jurisdiction.

Plaintiff's Statement

Plaintiff Antoinette Quander-Clemons ("Plaintiff") is a citizen of Clinton, Maryland. who

has been the Secretary for the Associate Director of Finance and Administration for the

Department of Mental Health, an agency of Defendant District of Columbia.  Plaintiff has been

employed by Defendant District of Columbia for 24 years.  For 21 of those 24 years, Plaintiff

was stationed at Saint Elizabeth's Hospital.

On June 28, 2005 Plaintiff was at her desk when Dr. Edward Kushner ("Kushner") and

Dr. Abrams ("Abrams") entered Plaintiff's office.  Kushner and Abrams asked to leave a

message for Robin Knight with Plaintiff.  When she agreed, Abrams told Plaintiff to "tell Robin

[Knight] that time is running out and running out fast and that she needs to get [her work] done."

Kushner added, "tell her to get it done before we lynch her."

Both Plaintiff and Robin Knight are African-American women.

On July 6, 2005, Kushner sent Plaintiff correspondence entitled "Apology."  In his

apology, Kushner admitted that "while Dr. Abrams and [Kushner] were talking to [Plaintiff], I

used the term "lynch." Kushner admitted that he "deeply regret the use of this term and [he]

ashamed that [he] said [lynch]."  Kushner suggests that he understood and recognized the

connotation of the term "lynch" when he used it, thus prompting him to feel "deep regret" and

"ashamed."  Kushner used the term lynch because it is a term which African-Americans find

particularly threatening and therefore intentionally discriminated against Plaintiff on account of

her race.

In June 2005, Plaintiff was in a meeting in Mr. Mayo's ("Mayo") office with Gerard

Tolliver ("Tolliver"), who was Plaintiff's supervisor.  During that meeting, Mayo started

discussing and denying rumors circulating about him.  Tolliver interrupted Mayo and

suggestively stated that there was a rumor that he and Plaintiff were involved in a sexual

relationship.  Plaintiff, emotionally and mentally disturbed by Tolliver's innuendo, stated that

she had never heard of that rumor.  Plaintiff felt that Tolliver had fabricated the rumor to

intentionally make sexual advances towards Plaintiff and to intentionally discriminate against

Plaintiff on account of her sex.

Immediately following the meeting, Plaintiff asked her co-worker whether there were any

rumors about a relationship between Tolliver and Plaintiff, but her co-worker said that there was

no such rumor.

Around 5:00 p.m. that day, Tolliver approached Plaintiff and asked her what her plans

were for the evening.  When Plaintiff informed Tolliver that she was going home to her husband

and planning on studying, Tolliver proposed that she "go to a club" with Tolliver and his buddies

instead of returning home.  Plaintiff declined his invitation because Tolliver was trying to initiate

a sexual relationship with Plaintiff and Plaintiff was happily married.   Tolliver insisted that she

join him and insisted on giving Plaintiff the address of the club.  Plaintiff did not meet Tolliver at

the club. Tolliver's advances were meant to intentionally discriminate against Plaintiff on

account of her sex (female).

At 10:30 a.m. on Thursday August 18, 2005 Plaintiff entered Tolliver's office and

greeted him by saying "good morning" to Tolliver and Jerome Austin ("Austin"), who was also

present.  Tolliver responded to Plaintiff's greeting be stating to Austin and Plaintiff, "Toni

[Plaintiff Antoinette Quander-Clemons] is my ho today." Plaintiff was so shocked at Tolliver's

statement she exclaimed "What?!"  Austin, who was also shocked at Tolliver's statement, d

exclaimed "What did you just say?!"  Tolliver repeated, "Toni is my **ho** today."  Plaintiff was

humiliated and embarrassed, particularly because Tolliver was her supervisor, because she knew

that the term "ho" was a slang term for a prostitute.  In response to Tolliver's statements,

Plaintiff left the office and began to cry and be consoled by co-workers

About August 18, 2005, Plaintiff approached Tolliver and asked him how he could make the shocking statements like calling her a "ho," because she is not his "ho." Tolliver stated that referring to Plaintiff has "his ho" or "his bitch" was a term of affection. Plaintiff told Tolliver that she did not believe being someone's "ho or bitch" was a term of affection, but constituted sexual harassment. Upon hearing the term "sexual harassment," Tolliver grew more serious and, when asked not to refer to Plaintiff as a "ho" or "bitch," responded, "well, that's what you're acting like." Tolliver then said, "you're acting like a bitch right now because I called you a 'ho.'" Plaintiff then left the office. Tolliver's statements were meant to intentionally discriminate against Plaintiff on account of her sex.

Later, Plaintiff received a voicemail message from Tolliver. After the activities described in paragraphs 8 through 64, Plaintiff received a voicemail message from Tolliver. At the end of the message, an unidentified person asked Tolliver who he was talking to, to which Tolliver responded, "My secretary. I am about to firer her ass." In addition, Tolliver repeatedly told the Chief Executive Officer, that "]Plaintiff] must not want [her] job."

Tolliver's threats to fire Plaintiff were a result of Plaintiff's refusal to engage in a sexual relationship with Tolliver. These threats and Tolliver's statements made Plaintiff felt that her job was in jeopardy, caused Plaintiff to feel uneasy and threatened at her place of employment, and caused Plaintiff to feel that she worked in a hostile working environment.

Defendant's Statement

The Defendants deny all allegations of wrongdoing from acts of commission or omission. The Defendant does not believe that it has violated any laws, or is liable for any misconduct.

4

The Defendant further asserts that all off its employment decisions were made for legitimate, nondiscriminatory reasons.

## II.    RULE 16.3 REPORT

1. Status of Dispositive Motions.  The plaintiff does not believe that this action may be resolved by dispositive motion following discovery.  Defendant believes that this action might be resolved by dispositive motion following discovery.

2. Amended Pleadings: The parties do not at this time anticipate that it will be necessary to join third parties or amend the pleadings.

3. Assignment to Magistrate Judge: The parties do not consent to assignment of this case to a magistrate judge for any purpose other than mediation.

4. Settlement Possibility: The parties believe that mediation before a Magistrate Judge may prove fruitful in this matter after discovery is closed.

5. Alternative Dispute Procedures: The parties believe that alternative dispute resolution in the form of mediation may prove fruitful in this matter.  No neutral evaluation of the claims is sought at this time.

6. Dispositive Motions:  The parties believe that any dispositive motion should be filed within 45 days of the close of discovery, that any opposition to that motion should be filed within 30 days of the filing of the motion, and that any reply should be filed within 21 days of the filing of the opposition.

7. Initial Disclosures:  The parties agree to provide initial disclosures as required by Federal Rule of Civil Procedure 26(a)(1).

8. Discovery.  The parties request 180 days in order to complete discovery.  The parties

agree to limit the number of interrogatories to 25 per side.   The parties agree to limit the number of depositions to 5 per side.

9.  Experts: The parties agree that the requirements of Fed. R. Civ. P. 26(a)(2) should not be modified.  Defendant agrees to name their expert thirty (30) days after Plaintiff names her expert.

10. Class Action Procedures: Not applicable.

11. Bifurcation of Discovery or Trial:  The parties do not believe that bifurcation of this matter is necessary.

12. Proposed Date for the Pretrial Conference: The parties agree that a pretrial conference should be scheduled at the initial scheduling conference.

13. Trial Date: The parties believe that a trial date should be set at the initial scheduling conference.


                                        Respectfully submitted,


                                        _____/s/_____
                                        Jimmy A. Bell, Esq. (Bar No. MD 14639)
                                        Law Office of Jimmy A. Bell, P.C.
                                        9610 Marlboro Pike
                                        Upper Marlboro, MD  20772
                                        (301) 599-7620
                                        (301) 599-7623 (Fax)
                                        Counsel for Plaintiff

                                        ROBERT J. SPAGNOLETTI
                                        Attorney General for the District of Columbia

                                        GEORGE C. VALENTINE
                                        Deputy Attorney General, Civil Litigation Division

/s/
HOLLY M. JOHNSON [476331]
Chief, General Litigation Section III

/s/
NICOLA N. GREY [492150]
Assistant Attorney General
441 Fourth Street, N.W.
Sixth Floor South
Washington, D.C. 20001
(202) 724-6626
(202) 727-3625 (fax)
E-mail:  nicola.grey@dc.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                          :
**Antoinette QUANDER-CLEMONS**          :
                                                          :
                  Plaintiff,                           :
                                                          :          Case No. 1:06-cv-00227-PLF
v.                                                        :
                                                          :
**DISTRICT OF COLUMBIA,**                 :
                                                          :
                  Defendant.                         :
_____:


**<u>INITIAL SCHEDULING ORDER</u>**

UPON CONSIDERATION of the Report of Local Rule 16.3 Conference and the entire

record herein, it this _____ day of _____, 2006 hereby

ORDERED that the parties shall be allowed a discovery period of 180 days from the date

of the entry of this order, and it is further;

ORDERED that any dispositive motions shall be filed no later than 45 days after the

close of discovery, any opposition thereto shall be filed no later than 30 days following the filing

of the dispositive motion; and any reply shall be filed no later than 21 days following the filing

of the opposition; and it is further

ORDERED that expert witness reports shall be exchanged in accordance with Fed. R.

Civ. P. 26(a)(2).

ORDERED that the parties are limited to 25 interrogatories and 5 depositions per side.



Date_____                    _____

United States District Judge